IN THE UNITED STATES DISTRICT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-00371-01-CR-W-DW |
| | ) | |
| JOSE LOPEZ-LOPEZ, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is Magistrate Judge Larsen's Report and Recommendation on Defendant's Motion to Suppress Evidence and Statements Obtained on or About September 29, 2005 (Doc. 58). When a party objects to a Report and Recommendation on a motion to suppress, it is the duty of this court to conduct a <u>de novo</u> determination of those portions of the report, specific findings, or recommendations to which the party objects. 28 U.S.C. § 626(b)(1); <u>United States v. Hamell</u>, 931 F.2d 446, 468 (8th Cir.), cert. denied, 502 U.S. 928 (1991). After an independent review of the record, the applicable law and the parties' arguments, the Court declines to adopt the Magistrate's findings of fact and conclusions of law regarding the Motion to Suppress Evidence and Statements Obtained on or About October 18, 2005 and concludes the motion to suppress should be granted. (Doc. 59).

I.  <u>Facts</u>

On September 29, 2005, twelve to fourteen members of the Jackson County Drug Task Force and the Kansas City Police Department Street Narcotics Unit Tactical Squad executed a search warrant at Defendant's residence. Defendant was at home at the time of the execution of the search

1

warrant; he was taken into custody and interviewed by Detective John Howe at the scene. Defendant was eventually transported to the Independence Police Department and detained there.

Shortly thereafter, a car driven by Manuel Ramos-Avila pulled into the driveway behind a detective's car at Defendant's residence. Mr. Ramos-Avila was asked to exit the vehicle. Upon placing his right hand out of view, the officers pulled Mr. Ramos-Avila from the vehicle, at which point a handgun fell onto the seat. Mr. Ramos-Avila was taken into custody at that time. Later that night, when being interviewed by Detective Howe, Mr. Ramos-Avila stated that Defendant had methamphetamine hidden in a wall in Defendant's apartment.

Around 10:10 pm, Detective Howe re-interviewed Defendant, in order to obtain consent to search his apartment. Before presenting Defendant with the consent form, Detective Howe told Defendant that the police were looking for Defendant's identification paperwork. In truth, the police intended to look for methamphetamine. Specifically, Detective Howe said that he had skimmed over the documents while at Defendant's home initially but failed to recover them and wanted to go back to retrieve them. Detective Howe had not actually skimmed the documents himself; however, they were skimmed by other detectives on the scene. Detective Howe also told Defendant that he knew there was no dope in the apartment. He did not tell Defendant that Mr. Ramos-Avila had already told police that the Defendant kept drugs and paraphernalia in his residence.

Detective Howe asked Defendant if he could read English. Defended responded in the affirmative and Detective Howe gave him the Independence Police Department Consent to Search Form. The form authorized police to seize "any letters, paper, materials, contraband, or other property which they may desire." Defendant signed the form. Thereafter, the interrogators indicated to Defendant that they may seize illegal items from his residence.

2

After Defendant signed the form, Detective Howe and Detective Rigot returned to Defendant's residence and searched the apartment, specifically focusing on the bedroom. The detectives recovered methamphetamine hidden in a Kleenex box on the night stand next to the bed and some drug paraphernalia located inside a black Radio Shack bag hidden inside the wall behind a picture. The drugs were not exposed in either location. Detectives Howe and Rigot did not recover the identification documents for which they informed Defendant they were searching.

II.  Discussion

Defendant argues that detectives used deceit to obtain Defendant's consent to search his house and that such consent was limited. He argues that the detectives' search exceeded the scope of Defendant's consent and that the detectives then used the fruits of their illegal search to obtain additional incriminating statements from Defendant in violation of the Fourth and Fifth Amendments to the United States Constitution.

If evidence derived from a consensual search is to be admitted at trial, the government must demonstrate that the consent was voluntarily given, and not the result of duress or coercion, express or implied. Schneckloth v. Bustamonte, 412 U.S. 218, 248 (1973). The Court finds that the government has not met this burden.

A consent search is reasonable only if it stays within the limits of the actual consent. "Government agents may not obtain consent to search on the representation that they intend to look only for certain specified items and subsequently use that consent as a license to conduct a general exploratory search." United States v. Martel-Martines, 988 F.2d 855, 858 (8th Cir. 1993); United States v. Dichiarinte, 445 F.2d 126, 129 (7th Cir. 1971). The standard for measuring the scope of a suspect's consent is "that of 'objective' reasonableness – what would the typical reasonable person

3

have understood by the exchange between the officer and the suspect?" Florida v. Jimeno, 500 U.S. 248, 251 (1991). Here, Defendant consented to the search of his residence for identification papers. It is hardly reasonable to expect that the scope of the consent encompassed items hidden in a Kleenex box and in a bag inside the wall behind a picture.

The Government repeatedly, and erroneously, argues that the police had consent to search for methamphetamine because "Defendant Howe told the defendant that police wanted to search the defendant's house not only for identification paperwork but also for methamphetamine." (Doc. 92, P's Resp. to Obj. at 5). In support, the Government relies on paragraph 21 of the Report and Recommendations. Paragraph 21 of the Report and Recommendations states the following:

> Before presenting Defendant with the consent form, Detective Howe told Defendant that police were looking for identification paperwork, although they intended to look for methamphetamine. Specifically, Detective Howe said that he had skimmed over the documents while at Defendant's home initially but failed to recover them and wanted to go back and retrieve them. Detective Howe had not actually skimmed the documents himself, however; they were skimmed by other detectives on the scene.

Twice more, the Government misstates the record by citing this paragraph for the proposition that Detective Howe disclosed to Defendant that police intended to search Defendant's residence for the presence of methamphetamine before Defendant was given the consent form. See Doc. 92, P's Resp. to Obj. at 7, 10 ("The Magistrate found that Detective Howe informed the defendant the police intended to search the defendant's residence for methamphetamine while also searching the defendant's residence for identification documentation before the detective even presented the defendant with the consent form. (R & R, ¶ 21).") At no point in the Magistrate's Report and Recommendation does the Magistrate indicate that police informed Defendant that police would be searching Defendant's residence for the presence of methamphetamine before he was given the

4

consent form to sign. Any indication to the contrary is false. Any and all other indications that police wanted to search Defendant's apartment for illegal items occurred after the detectives had illicitly obtained Defendant's consent.

The burden is on the Government to show that the consent was voluntarily given, and not the result of duress or coercion, express or implied. In this regard, the Government has failed. The detectives gained Defendant's limited consent to search his residence for identification papers in a coercive environment - that of a custodial interrogation. The detectives told Defendant they were going back to the apartment for the sole purpose of retrieving documents that would confirm his identify. To reinforce this lie, the detectives told Defendant that they knew he had no drugs in his apartment, and by implication, were uninterested in conducting a further search for drugs. Defendant's consent, therefore, was limited to the retrieval of identification documents and the detectives' search exceeded the scope of the consent by searching only for drugs and drug paraphernalia.

From the outset of the interrogation, the police intended to deceive Defendant and impermissibly exceed the scope of Defendant's consent. The whole of the interrogation was premised on a series of lies. The detective who obtained consent to search lied to the defendant regarding: (1) the intended purpose of the search; (2) the detectives' knowledge of drugs being in the residence; and (3) the fact whether the detective shuffled through the documents he told Defendant he was going back to get, implying that he would be searching only that portion of the residence where the documents had initially been found. Such a affirmative misrepresentations are nothing more than consent through deception, and accordingly constitute implied coercion.

The Court holds law enforcement officers in high regard and believes that when a law

5

enforcement officer presents himself or herself to an individual and thereafter seeks that individual's cooperation or consent, it is axiomatic that the individual be able to rely on the officer's representations. In this case, the detectives set out to deceive the Defendant of their intentions from the beginning, and this the Court cannot tolerate.

III. Conclusion

Accordingly, the Court orders that Defendant's consent to search his residence on September 29 was not intelligently and voluntarily given, but rather was a product of intentional deceit and trickery. The Court refuses to tolerate such manipulation and dishonesty from law enforcement officers. Accordingly, Defendant's Motion to Suppress Evidence and Statements Obtained on or About September 29, 2005 is GRANTED (Doc. 58).

IT IS SO ORDERED

                                                                       /s/ DEAN WHIPPLE
                                                                           Dean Whipple
                                                              United States District Judge

DATE: August 7, 2006